FRANK F. HARDING, ATTORNEY GENERAL
PETITIONER FOR WRIT OF QUO WARRANTO
ON RELATIONS, ALFRED ERICKSON ET AL.

*vs.*

WILLARD A. BROWN

Knox.　Opinion, February 5, 1958.

*Christopher S. Roberts*, for plaintiff.

*Sanborn & Sanborn*, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

WEBBER, J.　On exceptions. This is a proceeding begun by an information in the nature of *quo warranto* brought by the attorney general of Maine on the relation of certain voters and taxpayers of the town of South Thomaston seeking judicial determination as to whether or not the re-

spondent Willard A. Brown legally holds the offices of selectman, assessor and overseer of the poor in that town. The matter was heard on the pleadings and a stipulation as to certain facts. The justice below decided that the respondent was without title to the offices in question and must be ousted therefrom.

The facts are not in dispute. At its annual town meeting in 1950, under proper warrant, and pursuant to the authority vested in towns by R. S. 1944, Chap. 80, Sec. 14, the town adopted the so-called "staggered system" by electing one selectman for one year, one for two years and one for three years. In 1951 at the annual meeting, the single vacancy was filled but for one year only, but two months later at a special meeting the town elected the incumbent for a term of three years. In each of the five succeeding years the town elected one selectman for a three year term. In 1957, however, at the annual meeting one William Robinson was elected selectman but only for a term of one year. The legality of his election for a term shorter than three years was raised by the respondent who had been defeated for the office by Robinson. Robinson then joined with the other two selectmen in signing a warrant for a special town meeting to be held April 8, 1957 "to choose the necessary Selectmen, Assessors, Overseers of the Poor, and Town agent to serve until the Annual Town (sic) of 1960." It is stipulated that this was a legal town meeting which necessarily means that the warrant was signed by Robinson at least seven days before April 8, 1957. R. S. 1954, Chap. 91, Secs. 2 and 7. At this special meeting Robinson and the respondent were both nominated for the office of selectman for a term of three years and the respondent was elected. The town had already voted that its three selectmen should also act as assessors and overseers of the poor. Brown was duly sworn and qualified. A short time later Robinson sent to the selectmen a letter of resignation from the board

carrying the postscript, "to settle some peoples *(sic)* opinion."

A question has been raised as to whether the town, having adopted in 1950 the "staggered system" by vote (rather than by ordinance as provided by R. S. 1944, Chap. 80, Sec. 83, Subsec. XII) could thereafter legally elect a selectman for a term of only one year. On our view of the factors which are decisive here, it is unnecessary to determine that issue. An interpretation of the statute (R. S. 1944, Chap. 80, Sec. 14), not otherwise required for a determination of this case, would be at best an academic exercise in view of the fact that the statute was repealed by P. L. 1957, Chap. 405, Sec. 2, and an orderly process established by which towns may adopt and later, if they so desire, abandon the so-called "staggered system." P. L. 1957, Chap. 405, Sec. 1 enacting R. S. 1954, Chap. 90 A, Sec. 36, Subsec. IV. Suffice it to say that if the action of the town at the annual meeting in 1957 was in violation of the statute, Robinson was never elected and the office was vacant when the respondent accepted it. If on the other hand Robinson was legally elected, he vacated the office by his voluntary action. The result is the same in either case.

Considering further the latter alternative, it has been said that the resignation from a public office may be implied. McQuillan on Municipal Corporations, 3rd Ed., Vol. 3, Sec. 12.123 states the applicable rule as follows:

> "An office may be vacated by abandonment. Abandonment may be treated as a constructive resignation * * * *. A resignation of a public office may be either express or implied. A resignation by implication may take place by an abandonment of official duty without leave of absence or without good cause shown. But what acts will constitute abandonment or implied resignation of an official depend, of course, upon the circumstances of the particular case and the controlling law."

In determining whether there has been an abandonment of office, it is important to ascertain the intention of the official. As was said in *State* v. *Harmon*, 115 Me. 268 at 272:

> "It is a well settled principle that a public office may be abandoned by the incumbent so that a vacancy in the office is thereby created. To establish such abandonment, however, the proof must show a voluntary and intentional relinquishment of the office by the incumbent, for there can be no abandonment of an office or any other right without an intention, actual or imputed, to abandon it. Such intention is a question of fact, and may be inferred from the party's acts. If his conduct is such as to clearly indicate that he had relinquished the office, an intention to do so may be imputed to him."

We think the events as they transpired in the case before us sufficiently evidenced an intention on the part of Robinson to abandon the office of selectman and such other derivative offices as he held. Very soon after the legality of his election at the annual meeting was questioned, he signed a warrant calling a special meeting for the purpose of filling a vacancy in the office of selectman. No useful purpose would be served by calling such a meeting unless a vacancy in fact existed. It is apparent then that Robinson intended to create the vacancy which would require another election if such vacancy did not already exist. His subsequent conduct was entirely consistent with such an intention. He allowed his name to be put in nomination at the special meeting and participated as an active candidate for the office. Having been defeated by the respondent, he subsequently tendered an express written resignation which we think may be fairly considered as a confirmation of his previous resignation by implication. The quoted postscript inferentially indicates his desire to remove all doubts as to his previous intention and lay at rest any opinion

that he had not intended to abandon the office. Mr. Robinson is not one of the relators in this proceeding and makes no claim to the office. It seems fair to attribute to his acts the motive and intention which would best serve the public interests of the town. Those interests are not well served either by having a long continued vacancy in office or by having an incumbent in office whose lawful claim thereto is doubted or doubtful. He proceeded in the manner best calculated to stabilize the position of the town by providing the voters a new opportunity to fill a vacancy. The town availed itself of this opportunity by electing the respondent selectman for a term of three years, which office together with the derivative offices of assessor and overseer of the poor he now holds. The entry will be

> *Exceptions sustained.*
> *Remanded for entry of judg-*
> *ment dismissing information.*