W. B. WEBB *v*. CITY OF WILLIAMSON
DEWEY BOAZ *v*. CITY OF WILLIAMSON

(Nos. 6424, 6425)

Submitted May 7, 1929.    Decided May 14, 1929.

376

William B. Hogg, for plaintiff in error.

W. H. D. Preece, James Damron and G. R. C. Wiles, for defendants in error.

LIVELY, JUDGE:

In these actions, tried by the court in lieu of a jury, in which recovery was sought against the defendant, City of Williamson, for salary claimed to be due W. V. Webb, as city street commissioner, and Dewey Boaz, as city patrolman, from June to October, 1927, inclusive, judgment was rendered for $933.34 in favor of Webb, and for $746.67 in favor of Boaz. These writs followed.

Prior to June 10, 1927, one Reynolds as street commissioner and certain others as patrolmen were serving the city under appointments duly made. By resolution enacted on the date last mentioned, the city council voted to remove Reynolds as street commissioner, A. R. Stepp as chief of police, and certain others as patrolmen, and to appoint in their stead W. V. Webb as street commissioner, Evan Hall as chief of police, and Dewey Boaz and others as patrolmen. These officers qualified by taking oath and giving bond, but the then incumbents of the positions, claiming that they had not been lawfully removed therefrom, continued to carry out their respective

duties. This met with the approval of the mayor, who refused to recognize the council's new appointees.

The later set of officers by a mandamus proceeding in this Court attempted to compel the mayor to grant them official recognition, and to have the old set of officers restrained from assuming to act as such. By order entered on September 30, 1927, this writ of mandamus was refused. Subsequently, W. F. Hatfield, mayor of the city, and the old set of officers secured a temporary injunction in the circuit court of Mingo county, under the terms of which the petitioners here, W. V. Webb and Dewey Boaz, and others, were restrained from attempting to act as officers of the city, and the clerk of the city commission was required, upon request, to make out and sign warrants upon the city treasurer for the payment of the salaries of the plaintiffs in the injunction suit for the period such salaries were then in arrears. This temporary injunction was dissolved by the circuit court of Mingo county on October 11, 1927, and an appeal from that decision was taken to this Court.

By a separate mandamus proceeding, Evan Hall, newly appointed chief of police, sought to have his right to that office adjudicated in the circuit court of Mingo county. The relief prayed for by him was granted in the trial court, but a writ of error to that judgment was allowed. The writ of error in the mandamus case and the appeal in the injunction suit were heard together in this Court, and in a decision rendered on April 24, 1928, we declined to pass upon the validity of Hall's appointment under the resolution of June 10, 1927, but did hold he was ineligible to appointment as chief of police because on that date he was still a member of the department of public safety. In the chancery suit, it was held that as the purpose of the bill and the temporary injunction awarded therein was "not to determine the question of the right and title to the office in question, but to protect the possession of the officer whether *de facto* or *de jure*, until the right shall be established by law, and to preserve the welfare and good order of society", the temporary injunction would be reinstated and the cause remanded for further proceedings.

On July 13, 1928, the circuit court of Mingo county made permanent the temporary injunction awarded on September 30, 1927, and acting under the direction of that court's order the city clerk made up and signed warrants for the payment of the salary of the old set of officers, which was then in arrears. It will be noted that this included the months for which the salary is now being claimed by the plaintiffs Webb and Boaz.

The counsel for the city contends that the trial court erred in entering judgment for the plaintiff, because, it having been determined by the proceedings heretofore mentioned, that Reynolds and the others were the *de jure* officers, then Webb and Boaz could only be *de facto* officers, and as such they would not be entitled to the salaries annexed to their respective positions. Defendants in error controvert this contention and say that the prior litigation did not establish that they were not *de jure* officers.

Granting that by the prior litigation referred to herein no judicial determination has been made that the old set of officers are *de jure*, yet plaintiffs Webb and Boaz are not entitled in the instant proceeding to recover for the salaries alleged to be due them from June to October, 1927, inclusive. They were clearly not *de facto* officers, because at the time they attempted to assume office the members of the old group were still carrying out their duties, and consequently no opportunity was afforded Webb and Boaz to assume the status of *de facto* officers. Constantineau on De Facto Doctrine, Secs. 78 and 80. Furthermore, by the great weight of authority, since the salary annexed to the office is an incident to the title, the right of the plaintiffs to recover depends upon their status as *de jure* officers. 46 C. J., sec. 377, p. 1059. And where another is occupying the office under a rightful claim, the person who sues for the salary must, first, in a proper proceeding, establish his right as a *de jure* officer. This cannot be done in a suit to recover the salary to which the other claimant is not a party. To hold otherwise would be to permit a collateral attack upon the title to the office. As was said in *Leonard* v. *City of Terra Haute*, 93 N. E. (Ind.), 872: "We recognize the principle of law announced in the line of cases

which hold that when a *de facto* officer is in possession of an office and discharging its duties under a color of right, a person claiming to be a *de jure* officer, and as such entitled to the possession of the same office, cannot maintain an action for salaries or fees incident to the office. He must in such case first establish the right to the office by a *quo warranto* proceeding. To permit him to sue for the salary of the office under such circumstances would be to permit him to try the title to an office in a collateral proceeding to which the person in charge of the office under a color of right was not a party.'' This principle of law is approved in *Gorley* v. *City of Louisville,* 47 S. W. (Ky.), 263, 265; *Wilkinson* v. *City of Albuquerque,* 185 Pac. (N. M.), 547, 548; *Keegle* v. *Hudson County,* 122 Atl. (N. J.), 606; *Rush* v. *Philadelphia,* 62 Pa. Super. Ct. 80; *Hagan* v. *City of Brooklyn,* 27 N. E. (N. Y.), 265, 266.

There is another reason for denying the plaintiffs a recovery. The effect of the circuit court's order entered on July 13, 1928, and from which no appeal was taken, making permanent the temporary injunction theretofore awarded, was to require the city clerk to pay the present incumbents of the contested offices the salaries then in arrears, which included compensation for the months the plaintiffs herein are now seeking a judgment. The salaries were paid by the clerk as directed, and Webb and Boaz who were parties to that suit are now barred as against the city from asserting any right to the compensation paid thereunder. Furthermore, where the salary of a *de facto* officer has been paid by the municipality, that payment can be set up as a complete defense to a subsequent suit to recover the same salary by another claiming title to the office; and this is true even though the municipality may have known at the time the salary was paid, that the title to the office was in question. Constantineau on De Facto Doctrine, secs. 224 and 225.

The judgment of the lower court will be reversed and judgment entered here for the defendant.

*Reversed and rendered.*