STATE *ex rel.* J. T. (TOM) GODBY

*v.*

OKEY L. HAGER, *et al., etc.*

(No. 12993)

Submitted September 2, 1970.    Decided November 17, 1970.

*Graziani, O'Brien & Paterno, Thomas P. O'Brien, Jr.,* for relator.

*Thomas R. Parks,* Assistant Prosecuting Attorney, for respondents.

HAYMOND, JUDGE:

In this original mandamus proceeding, instituted in this Court July 21, 1970, the petitioner J. T. (Tom) Godby seeks a writ to require the defendants Okey L. Hager, Junior Lambert and Leroy Counts, individually and as Commissioners of and constituting the County Court of Logan County, West Virginia, to approve and allow and order the payment of the claim of the petitioner in the sum of $6,432.58, representing salary, fees and commissions from September 24, 1969 to April 27, 1970, during which he was wrongfully removed from the office of Assessor of Logan County, West Virginia, under a judgment of the Circuit Court of Logan County rendered September 24, 1969, which was reversed, vacated and set aside by this Court April 21, 1970, upon appeal in the case of *John L. Smith, et al. v. J. T. (Tom) Godby,* 154 W.Va. 190, 174 S.E.2d 165.

Upon the petition and its exhibits a rule was issued in vacation returnable September 2, 1970, at which time this proceeding was submitted for decision upon the petition and its exhibits, the answer of the defendants and its exhibits, the briefs and the oral argument of counsel in behalf of the respective parties.

At the time of his removal from the office of assessor, pursuant to the judgment of the Circuit Court of Logan County entered September 24, 1969, the petitioner was serving his third consecutive term as the holder of that office. No suspension of the judgment was granted and on September 25, 1969, the County Court of Logan County appointed Ralph Grimmett as assessor of Logan County in the place and stead of the petitioner. Grimmett qualified as assessor of Logan County by subscribing to the oath prescribed by law and entered into bond and continued to occupy that office and served as assessor of Logan County until April 27, 1970, when the petitioner, under the decision of this Court, was reinstated and took possession of the office of assessor.

During the time that Grimmett occupied the office of assessor he performed the duties of the office and was paid by the county court the sum of $5,936.28, which included $5,076.28 salary from September 25, 1969 to April 27, 1970, which is an incident to the office, and $860.00 assessor's fees for agricultural reports during the same period of time. The sum of $5,076.28 represents the salary to which the petitioner was entitled and which he would have been paid if he had occupied the office of assessor during that period. Grimmett accepted the appointment as assessor in good faith and the county court in good faith paid him the foregoing amount.

On June 5, 1970, the petitioner filed his claim with the Clerk of the County Court of Logan County, which was duly presented to the county court on that day, in the amount of $6,432.58, consisting of salary from September 23, 1969 to April 27, 1970, of $5,076.28, assessor's fees for agricultural reports during the same period of $860.00 and 10 per cent commission of $496.30 on capitation tax which was paid to Grimmett by the State of West Virginia during the same period. After obtaining an opinion of the prosecuting attorney who recommended that the claim be denied, the county court, by order entered July 6, 1970, refused to pay the claim. As the item of commission on capitation tax is not payable by the county, the petitioner concedes that he can not recover that item from the county court, and as the fees for agricultural reports are not payable unless the services for which the fees are allowed are performed and it does not appear that the petitioner has performed such services, the amount of his claim in this proceeding is reduced from $6,432.58 to $5,076.28 by the elimination of the items of $860.00 fees and $496.30 commissions.

The controlling question for decision is whether the petitioner, having been wrongfully removed from the office of assessor, is entitled to recover from the governmental authority the salary of the office during the period of his removal when the office was occupied by a person appointed to that office and who in good faith performed the duties of the office and was paid the salary which the petitioner would have received but for his wrongful removal from the office.

The question is one of law as to which there is a distinct split of authority and is one of first impression in this State. A majority of the courts in various jurisdictions hold it to be the general rule in the absence of a controlling statute that an officer de jure can not recover from the governmental body salary of the office paid by it to an officer de facto during the period when the de jure officer is deprived of his office. A minority of the courts, however, hold that this defense will not discharge the public body for liability to the de jure officer for that period in which the de facto officer performed the duties of the office and received the salary therefor. *La Belle v. Hazard*, 91 R.I. 42, 160 A.2d 723; 67 C.J.S., *Officers*, Section 99; Annotation, 64 A.L.R.2d 1375, at pages 1377-1378. Various reasons are given in support of each rule.

The reasons offered in support of the majority rule are that the governmental authority has received only one service and ought not to be made twice to pay for such service; that efficiency in government requires that officers and employees be promptly paid for their services and disbursing officers ought to be permitted to rely upon the apparent right of the de facto officer to be paid for his services; that since the de jure officer has no property or contract right in the office, it is only fair that he perform his duties before he is entitled to recover any salary; that broad grounds of public policy preclude the payment of back salary to the de jure officer; and that successful governmental operation may be seriously impaired by repeated and large-scale withdrawal of governmental funds for which no provision has been made by the public authority.

The reasons advanced in support of the minority view are that the salary involved follows the legal title to the office; that the majority rule is unique in that no similar rule exists in connection with any other claims against the governmental authority; that the public good is not served when a public officer, legally entitled to salary, does not receive it; that the public authorities ought not to be told that they may countenance the intrusion of a public office with impunity; and that it is more just that the public treasury be made to respond to the de jure officer rather than that the de facto officer be made to suffer, where the fault of the de jure officer's absence

from office lies with public agents and not with the de facto officer. See Annotation, 64 A.L.R.2d pages 1377-1378.

Among the numerous decisions which support the majority rule are: *Irwin v. Jefferson County,* 228 Ala. 609, 154 So. 589; *Drach v. Leckenby,* 64 Colo. 546, 172 P. 424, L.R.A. 1918F 576; *Coughlin v. McElroy,* 74 Conn. 397, 50 A. 1025, 92 Am. St. Rep. 224; *State ex rel. Jones v. Wise,* 39 Del. 409, 200 A. 418; *Talmadge v. Cordell,* 167 Ga. 594, 146 S.E. 467; *Bullis v. Chicago,* 235 Ill. 472, 85 N.E. 614; *McClinton v. Melson,* 232 Iowa 543, 4 N.W.2d 247; *Hallowell v. Buffalo County,* 101 Neb. 250, 162 N.W. 650; *Wilkerson v. City of Albuquerque,* 25 N.M. 599, 185 P. 547; *Osborne v. Town of Canton,* 219 N.C. 139, 13 S.E.2d 265; *State ex rel. Cox v. Hooper,* 137 Ohio St. 222, 28 N.E.2d 598; *Fuller v. Roberts County,* 9 S.D. 216, 68 N.W. 308.

Some of the cases which support the minority rule are: *Ward v. Marshall,* 96 Cal. 155, 30 P. 1113; *Wilkinson County Board of Supervisors v. Jolliff* (Miss.), 230 So. 2d 61; *Ness v. City of Fargo,* 64 N.D. 231, 251 N.W. 843; *Board of County Commissioners of Oklahoma County v. Litton* (Okla.), 315 P.2d 239, 64 A.L.R.2d 1365; *La Belle v. Hazard,* 91 R.I. 42, 160 A.2d 723; *Andrews v. City of Portland,* 79 Me. 484, 10 A. 458, 10 Am. St. Rep. 280; *Baker v. City of Nashua,* 77 N.H. 347, 91 A. 872; *Tanner v. Edwards,* 31 Utah 80, 86 P. 765, 120 Am. St. Rep. 919, 10 Ann. Cas. 1091; *Cowan v. State ex rel. Scherck,* 57 Wyo. 309, 116 P.2d 854, 136 A.L.R. 1330. See also, *Adams v. Rubinow,* 157 Conn. 150, 251 A.2d 49; *Holley v. McDonald,* 154 Conn. 228, 224 A.2d 727; *McDermott v. City of New Haven,* 107 Conn. 451, 140 A. 826; *Oliver v. Spitz,* 76 Nev. 5, 348 P.2d 158.

When wrongfully removed from the office of assessor the petitioner was a de jure officer. A de jure officer is an officer who is in all respects legally selected and qualified to exercise the office and has the lawful right or title to it. 43 AM. JUR., *Public Officers,* Section 472. Grimmett, who occupied the office from which the petitioner was removed and discharged its functions under color of authority was a de facto officer. *Stowers v. Blackburn,* 141 W.Va. 328, 90 S.E.2d 277; *State ex rel. Scanes v. Babb,* 124 W.Va. 428, 20 S.E.2d 683.

In discussing the distinction between a de facto officer and a de jure officer, the text in 43 AM. JUR., *Public Officers,* Section 472, contains these statements: "An officer de jure may be said to be one who is in all respects legally appointed and qualified to exercise the office. * * *. The difference between the basis of the authority of a de jure officer and that of a de facto officer is that one rests on right, the other on reputation; a de jure officer has the lawful right or title, without the possession of the office, while a de facto officer has the possession and performs the duties under color of right, without being technically qualified in all points of law to act."

Reversal of the judgment of removal of a de jure officer nullifies such removal and effectively preserves and continues the title of such officer to the office from which he was wrongfully removed. See, *Board of County Commissioners of Oklahoma County v. Litton* (Okla.), 315 P.2d 239, 64 A.L.R.2d 1365.

Though the numerical weight of authority recognizes and applies the general rule that the payment of the emoluments of the office to a de facto officer during the period of the wrongful removal of the de jure officer is a complete defense to the claim of the de jure officer for payment by the governmental body of the salary accruing. during the period of his wrongful removal, this Court prefers the minority rule that a de jure officer who is wrongfully removed from office is entitled to the salary of the office during the period of his removal and may enforce payment by the governmental body even though such salary has been paid by it to a de facto officer for his services during the period of his occupancy of the office. The minority rule is sound, just and logical, and is recognized, approved and adopted by this Court, instead of the majority rule with respect to the wrongful removal of a de jure officer from the office to which he has title and which he is entitled to hold. A de jure officer who is wrongfully removed from his office should not be required to suffer the additional loss of the salary of the office and as between him and the governmental body that body should bear such loss rather than the officer who has been wrongfully removed from the office.

The well established general rule is that the legal right to an office carries with it the right to the salary. *Davenport v. Teeters* (Mo.), 315 S.W.2d 641; *Gershon v. Kansas City*, 240 Mo. App. 418, 215 S.W.2d 771. "The reversal of a judgment removing an officer from an office, removes the only impediment to his office, and he is in law the only lawful holder of the same, and no order of this court is necessary to restore him thereto." Point 3, syllabus, *Phares v. State*, 3 W.Va. 567, 100 Am. Dec. 777; *Layne v. Hayes*, 141 W.Va. 289, 90 S.E.2d 270.

In the leading case of *Board of County Commissioners of Oklahoma County v. Litton* (Okla.), 315 P.2d 239, 64 A.L.R. 2d 1365, in which a county commissioner, having been convicted of a criminal offense which by statute carried forfeiture of his office, was deprived of possession of the office until the judgment of conviction was reversed and during the pendency of the appeal the office was occupied by a de facto officer appointed to serve until the expiration of the term of the office and was paid for his services during the time he occupied the office, the court held in points 2 and 3 of the syllabus that "The salary of a public officer is an incident to his office, and the legal right to receive or enforce payment thereof goes with the legal title to said office" and that "In absence of estoppel or waiver, payment by a county to a de facto officer is no defense to an action brought by a de jure officer for the salary of an office prematurely, involuntarily, and erroneously surrendered under a court judgment."

In *La Belle v. Hazard*, 91 R.I. 42, 160 A.2d 723, in which the plaintiff, a de jure officer, sued the town treasurer to recover salary allegedly due him as highway surveyor of the town during the period in which a de facto officer acted in his place, the court held that the salary of a public officer is an incident to the office and the legal right to receive or enforce its payment goes with the title to the office; that where the fault for a de jure officer's absence from office lies with public agents and not with the de facto officer, the public treasury should be made to respond to the de jure officer; and that a de jure officer who has been wrongfully excluded from office may rest upon his legal right to salary of the office regardless

of occupancy of the office by a de facto officer in the absence of any conduct on the part of the de jure officer which amounts to waiver or estoppel. In the opinion in discussing the majority rule and the minority rule and in adopting the minority rule, the court said:

"A numerical majority of the courts appear to hold that payment to a de facto officer performing his duties under a claim and color of title to the office effectively discharges the public body from liability to the de jure officer or employee for that period in which the de facto officer performed his duties and received compensation therefor. *Board of Auditors of Wayne County v. Benoit,* 20 Mich. 176; *Coughlin v. McElroy,* 74 Conn. 397, 50 A. 1025; 64 A.L.R.2d 1375, 1378. The minority opinion holds that such payment will not preclude recovery by the de jure officer or employee. See, *Andrews v. City of Portland,* 79 Me. 484, 10 A. 458; *Baker v. City of Nashua,* 77 N.H. 347, 91 A. 872, 64 A.L.R.2d 1375, 1390. Public policy is cited as authority for a decision by courts favoring both views. *Ness v. City of Fargo,* 64 N.D. 231, 251 N.W. 843.

"It is the opinion of this court that where the governmental body is responsible for the situation giving rise to the dispute to office, where it has notice that such a dispute exists, and where the de jure officer in no way acquiesced in his removal from office, he is entitled to the salary of the office regardless of whether a de facto officer has already been paid by the governmental body. The salary of a public official is an incident to the office, and the legal right to receive or enforce the payment thereof goes with the legal title thereto. *Andrews v. City of Portland,* supra; 55 A.L.R. 997, 1004."

In *Ness v. City of Fargo,* 64 N.D. 231, 251 N.W. 843, the court adopted the minority rule and held in point 3 of the syllabus that "Where a city assessor is wrongfully dismissed from office, he may recover his salary from the city for the period of the wrongful ouster, notwithstanding the fact that the salary for such period was paid by the city to a de facto officer, unless he has waived his right to such salary or by his conduct has estopped himself from claiming it."

In the recent case of *Wilkinson County Board of Supervisors v. Jolliff* (Miss.), 230 So. 2d 61, the Supreme Court of Mississippi held that a county supervisor, who was removed from office pursuant to a statute requiring removal of public officers convicted of crime and was reinstated upon reversal of conviction, was entitled to payment by the board of supervisors of the county of the salary, with interest, during the period of his removal from the office. In reaching that conclusion the court based its decision upon *La Belle v. Hazard*, 91 R.I. 42, 160 A.2d 723, and *Board of County Commissioners of Oklahoma County v. Litton* (Okla.), 315 P.2d 239, 64 A.L.R.2d 1365.

In *Ward v. Marshall*, 96 Cal. 155, 30 P. 1113, the Supreme Court of California held "that, where a judgment removing a justice of the peace from office for willful misconduct therein is reversed on appeal, the justice is entitled to his salary during the period of removal, though another has filled the vacancy and been compensated therefor."

Additional citations of decisions which recognize and adopt the minority rule rather than the majority rule could be mentioned but the decisions cited and referred to and the quotations from the opinions in those cases are sufficient to persuade this Court to approve and adopt the minority rule. Under the minority rule it is clear that the petitioner is entitled to payment by the defendants, as commissioners of and constituting the County Court of Logan County, of the salary of the office of Assessor of Logan County during the period in which he was wrongfully deprived of the office amounting to $5,076.28 and, as it is the nondiscretionary duty of the county court to cause the payment of that sum to the petitioner, such payment may be enforced in this mandamus proceeding. Mandamus is a proper remedy to require the performance of a nondiscretionary duty by a governmental body. *State ex rel. Allstate Insurance Company v. Union Public Service District*, 151 W. Va. 207, 151 S.E.2d 102, and the cases cited in the opinion in that case.

This Court, therefore, holds that a duly elected county assessor, a de jure officer who has been wrongfully removed from office by a judgment which is subsequently reversed and

who is then restored to the office, is entitled to payment by the county court of the salary of the office during the period of such removal, in the absence of any conduct by him which constitutes waiver or estoppel, even though a de facto officer occupied the office during that period of time and was paid by the county court for his services as such occupant of the office; and mandamus lies to require the county court to pay such assessor the salary which he would have received but for such wrongful removal.

The decision of this Court in *Webb v. City of Williamson*, 107 W.Va. 375, 148 S.E. 324, is clearly distinguishable from the case at bar. Unlike the petitioner in this case, who is a de jure officer holding title to the office of assessor, neither plaintiff in the *Webb* case who sought to recover the salary of the office to which he made claim had ever occupied the office as a de facto officer or had previously established his title to it as a de jure officer. For that reason neither plaintiff was entitled to the salary of the office and the claim for such salary was properly denied.

The writ of mandamus is awarded to require the defendants, commissioners of and constituting the County Court of Logan County, to approve and cause the payment to the petitioner of the salary of the office of assessor during the period of his removal in the principal amount of $5,076.28.

*Writ awarded.*